No. 6058.

HOWARD & PRESTON VS. THE MISSISSIPPI VALLEY BANK OF VICKSBURG.

This is a suit by attachment of the property of the defendants situated in New Orleans, the object of the suit being to recover from the Valley Bank the amount of various drafts drawn upon the plaintiffs by one of their own customers in the parish of Madison in this State, which drafts were cashed at Vicksburg by the Valley Bank and forwarded by that bank to New Orleans for collection, which plaintiffs paid, and which turned out to be forged and passed off to the Valley Bank that discounted them. The question is which of these parties shall bear the loss arising from the perpetration of this forgery.

The drawee of a bill is presumed to have a better knowledge of the signature of the drawer than the holder. It is for him to rely on his own knowledge and means of information on the subject, and not upon presumptions arising from the opinions of others. In this case the plaintiffs had in their possession at the time these forged drafts were accepted and paid a number of other drafts of Ultz drawn upon them which they knew to be genuine. They had the means of comparing the genuine signatures of their correspondent with the forged signatures, as well as various other means of determining the character of the spurious bills. The last two of the series of the forged bills it appears they did refuse, but subsequently paid them. Under these circumstances the loss should fall rather upon the plaintiffs than upon the defendants.

APPEAL from the Fifth District Court, parish of Orleans. *Cullom, J. J. W. Thomas,* for plaintiffs and appellees. *Frank L. Richardson,* for defendants and appellants.

TALIAFERRO, J. The plaintiffs, merchants of New Orleans, bring suit against the Mississippi Valley Bank of Vicksburg, in the State of Mississippi by attachment of the property of the defendants situated in New Orleans, the object of the suit being to recover from the Valley Bank the amount of various drafts drawn upon the plaintiffs by one of their customers residing in the parish of Madison in this State, which drafts were cashed at Vicksburg by the Valley Bank and forwarded by that bank to New Orleans for collection, which plaintiffs paid, and which it turned out were forged and passed off to the Valley Bank that discounted them. The defendants filed a general denial, and allege there was gross carelessness in the plaintiffs in not knowing the signature of their customer, and paying forged drafts upon themselves, thereby misleading the bank which took the drafts in the usual course of business in good faith and for a valuable consideration. There was judgment in favor of the plaintiffs, and the defendants have appealed.

The facts seem to be that a planter of large business and credit, residing in the parish of Madison, Louisiana, at no great distance from Vicksburg, named Ultz, was in the habit, for the purposes of his plantation business and engagements, of drawing drafts on the plaintiffs, his factors, in New Orleans, and his drafts were promptly paid when presented. These drafts were in general for sums less than five hundred dollars; few of them as large as four hundred dollars; some of them for

about one hundred dollars; and others for less than that amount. They were drawn payable to his own order, indorsed by him, and for the most part discounted by the Valley Bank at Vicksburg. Seven drafts of this character, which proved to be forgeries, amounting to $1666, were discounted by the Valley Bank and forwarded by the bank to New Orleans for collection, and they were paid by the drawees on presentation. The question is which of these parties shall bear the loss arising from the perpetration of this forgery. The plaintiffs and defendants mutually charge against each other gross negligence and carelessness, by which each complains they were misled in these operations. The defendants contend that the plaintiffs were bound to know the signature of their customer, and that it was their business to scrutinize the drafts when presented, and to reject them as spurious. The plaintiffs say that upon the face of these instruments it appears defendants took them on the indorsement of the drawer, when in reality they took them from unknown holders without requiring their indorsements. That when presented to plaintiffs they were thrown off their guard by the natural inference that the bank had taken the drafts directly from Ultz himself, and that they were not required to exercise strict vigilance in regard to the genuineness of the instruments under the circumstances of the case. These seven drafts were drawn at short intervals between the fourteenth and twenty-eighth of February, 1874. They were promptly forwarded for collection, and paid on presentation. The continuous act of plaintiffs in accepting and paying these drafts was calculated to induce the defendants to suppose that the plaintiffs knew them to be genuine. The plaintiffs, on the other hand, seem to have relied upon the presumption that the defendants knew the drawer and discounted these drafts for him, and received them directly from him. The position relied upon on the part of the plaintiffs seems to be that the indorsement of the holder recognizes the signature of the payee, on the authority of Story on Promissory Notes, pages from 135 to 180. On the part of the defendants, the issue before the court is held simply to be whether or not the payment of the first of this series of drafts did not cause the defendants to discount the six others presented at short intervals and paid by the drawees. The facts of this case seem to be materially different from those in McCall vs. Corning, 3 An. 414. There the court said that "it is an important feature in this case that the holders were not induced to take the bill by any acts of the plaintiffs," etc.

The drawee of a bill is presumed to have a better knowledge of the signature of the drawer than the holder. It is for him to rely upon his own knowledge and means of information on the subject, and not upon presumptions arising from the opinions of others. In this case the plaintiffs, it is shown, had in their possession at the time these forged

NEW ORLEANS MAY, 1876.                729

Howard & Preston vs. Mississippi Valley Bank of Vicksburg.

drafts were accepted and paid a number of other drafts of Ultz, drawn upon them, which they knew to be genuine. They had the means of comparing the genuine signatures of their correspondent with the forged signatures, as well as various other means of determining the character of the spurious bills. The last two of the series of the forged bills, it appears, they did refuse, but subsequently paid them. We are induced to conclude upon the whole that the loss should fall rather upon the plaintiffs than upon the defendants, and that the judgment of the lower court should be reversed.

It is therefore ordered that the judgment of the district court be annulled, avoided, and reversed. It is further ordered that there be judgment in favor of the defendants, with costs in both courts.