BANK OF BLACK ROCK *v.* B. JOHNSON & SON TIE COMPANY.

Opinion delivered March 14, 1921.

1. BANKS AND BANKING — FORGED CHECK.—Payment of a forged check by the bank upon which it is drawn is made at the bank's peril, under Crawford & Moses' Digest, § 7789, and the bank is not justified in charging it against the depositor's account unless the latter is precluded from setting up the forgery or want of authority.

2. BANKS AND BANKING—QUESTION FOR JURY.—In an action by a depositor against a bank to recover the amount of a forged check charged against his account, where the bank cashed the check and returned it with others to the depositor, who kept it for seven days without making complaint that it had been forged,

and permitted the bank to charge the forged check to its account, it was error to direct a verdict for plaintiff, as the court should have submitted to the jury the question whether or not plaintiff had exercised ordinary care in examining the checks and discovering the forgery and reporting it to the bank.

3. BANKS AND BANKING—FORGERY OF CHECK—NEGLIGENCE OF DEPOSITOR.—If a depositor is guilty of negligence in not discovering and giving notice of a forged check, the bank might thereby be prejudiced by being prevented from taking steps by the arrest of the criminal or by attachment of his property or other proceeding to compel restitution.

Appeal from Lawrence Circuit Court, Western District; *D. H. Coleman*, Judge; reversed.

### STATEMENT OF FACTS.

Appellee sued appellant before a justice of the peace to recover $295, being the amount of a forged check purporting to have been drawn by appellee, which was cashed by appellant and charged to appellee. Judgment was there rendered in favor of appellant, and the case was carried to the circuit court by appellee, where there was a trial *de novo*.

The facts, briefly stated, are as follows:

The B. Johnson & Son Tie Company is a foreign corporation doing business in the State of Arkansas, and W. M. Prater is its State manager. W. N. Pruett was one of appellee's agents, who had authority to sign checks for appellee in payment of ties. Appellant is a bank doing business at Black Rock, Arkansas. Appellee had furnished the bank with Pruett's signature on a card and the bank had been cashing his checks for two or three years. The check in question was for $295, dated May 22, 1919, and payable to J. Jones at the Bank of Black Rock. It was signed, "B. Johnson & Son Tie Company, per W. N. Pruett, Inspector." The check was cashed by the bank on May 26, 1919, and was sent by it to appellee and received by it on June 4, 1919. Appellee kept the check until June 11, 1919, when it took it up and the bank charged its account with it. Appellee closed out its account with appellant on June 11th, and placed it with

another bank. At that time nothing was said about the check sued on being a forgery. Subsequently appellee found out that the check in question was a forgery. Appellee gained the information in this way. It received another check drawn on another bank purporting to have been signed by its agent, W. N. Pruett. It discovered that this check was a forgery and immediately sent to both the banks with which it did business for all checks purporting to have been issued by it and cashed by the banks. The checks were about 800 in number. Among them was the check sued on, and it was discovered to be a forgery. Appellee then notified appellant of the fact that the check was a forgery and demanded payment of appellant, which was refused. This was about thirty days after appellee had taken up the check after it had been cashed by appellant.

A verdict for appellee was returned, and to reverse the judgment rendered this appeal has been prosecuted.

*R. C. Waldron,* for appellant.

The court erred in directing a verdict for appellee. 115 Ark. 166. Appellees did not give notice of the forgery of the check in time. 4 N. H. 457; 49 Ark. 45. The testimony was conflicting and a jury should have passed on the case.

*Cohn, Clayton & Cohn* and *L. B. Poindexter,* for appellee.

The check was a forgery, and appellant was negligent. Appellant was not prejudiced by the failure to give notice earlier. Whenever a bank receives money on deposit, it agrees that it shall only be paid out on the order of the depositor, and it can not charge a depositor with money paid out on a forged check. 142 Ark. 414-18; 7 C. J. 683. See, also, Negotiable Inst. Act, §§ 23, 185; C. & M. Digest, §§ 7789, 7951; 205 S. W. 96-8-9.

Where a check forged has been paid through the negligence of the bank's employee the bank is liable, even if the depositor is neglectful in notifying the bank of the

forgery.   76 Hun (N. Y.) 475; 27 N. Y. Supp. 1070; 10 Misc. 680; 171 N. Y. 219; 57 L. R. A. 529, 533-4; 20 L. R. A. (N. S.) 79-80; 16 *Id.* 593, 600; 141 Ark. 414-18; 73 *Id.* 561-7-8; 115 *Id.* 326.

Even if appellant had not been negligent, delay on the part of the depositor to notify the bank of the forgery is immaterial where the bank fails to allege or prove damage or prejudice growing out of such failure.   92 Cal. 4; 27 Pac. 1100; 14 L. R. A. 320; 5 Utah 504; 18 Pac. 43; 69 Tex. 38; 6 S. W. 171; 51 Md. 562; 39 Mo. App. 72; 191 Mass. 159; 77 N. E. 693; 76 Hun. 475; 27 N. Y. Supp. 1070; 10 Misc. 680; 31 N. Y. Supp. 790; 171 N. Y. 219; 57 L. R. A. 529-33-4; 20 L. R. A. (N. S.) 79, 80, and note; 141 Ark. 414, 418; 73 Ark. 561-7-8; 115 *Id.* 177.

Hart, J. (after stating the facts).   The undisputed evidence shows that the signature of appellee to the check in question was forged.

Section 7789 of Crawford & Moses' Digest relative to the effect of a forged signature is as follows:

"When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such a right, is precluded from setting up the forgery or want of authority."

Under this section payment upon a forged check by a bank upon whom it is drawn is made at the bank's peril, and it is not justified in charging it against the depositor's account unless the latter is precluded from setting up the forgery or want of authority.   This brings us to a consideration of what facts or circumstances will preclude the person, whose signature has been forged, from setting up the forgery.

In *Leather Manufacturers' Bank* v. *Morgan*, 117 U. S. 96, it was held that a depositor is bound personally or

by his agent, and with due diligence, to examine the pass-book and vouchers, and to report to the bank, without unreasonable delay, any errors which may be discovered in them; and if he fails to do so, and if the bank is thereby misled to its prejudice, he can not afterward dispute the correctness of the balance shown it in the passbook.

In *Citizens Bank & Trust Co.* v. *Hinkle,* 126 Ark. 266, the court held that it is the duty of a depositor to examine his returned checks and to make complaint to the bank if they furnish notice that improper charges have been made against his account.

In *Weinstein* v. *National Bank of Jefferson,* 69 Tex. 38, the court held that a bank is not liable to a depositor, when money has been paid out by it on forged checks, if the depositor, after receiving a statement of his account by which he is enabled to ascertain the forgery, neglects to inform the bank thereof in reasonable time, and thereby loses the opportunity of recovering the money, which it could have secured if promptly informed.

In *Janin* v. *London & San Francisco Bank* (Cal.), 14 L. R. A. 320, it was held that a depositor owes to the bank the duty of examining his checks within a reasonable time after they are returned to him in order to discover and give notice of any forgery. See, also, *Dana & Dana* v. *National Bank of the Republic,* 132 Mass. 156; *Shipman* v. *Bank of the State of New York* (N. Y.), 12 L. R. A. 791; *Hardy* v. *Chesapeake Bank* (Md.), 34 Am. St. Repts. 325; Morse on Banks and Banking (5 ed.), vol. 2, §§ 472-473; *First National Bank of Birmingham* v. *Allen* (Ala.), 27 L. R. A. 426, and *Robinson* v. *Security Bank & Trust Co.,* 141 Ark. 414. These authorities hold that the depositor must not only use due diligence in giving the bank notice or knowledge of the forgery, but must also exercise due diligence in discovering it. The depositor can not require the bank to correct a mistake to its injury from which it might have protected itself, but for the negligence of the depositor. So it is held that where the latter fails to complain within a reasonable

time after the checks have been returned to him the banker would have the right to consider that there was no objection to the checks, and that by the depositor's failure to speak in proper time he virtually admits the correctness of the items charged.

In the case of *State* v. *Abramson*, 57 Ark. 142, this court recognized that under the rules of commercial law it is the duty of a payer of commercial paper to give notice to the payee of the forgery within a reasonable time after its discovery, or to lose his right of recovery against the payee as a penalty for the failure to do so.

In the application of this principle the court held that where forged county warrants are paid in discharge of a debt to the county, laches will not be attributed to the county in failing to apprise the payer of the forgery until such time as the county court has had opportunity to examine and pass upon the genuineness of the warrants.

In discussing the question of notice in that case the court said that what is a reasonable time depends upon the reason for requiring the notice, and that what is a sufficient notice must depend in a great measure upon the effect produced by the lapse of time upon the remedies of the payee.

The court further said that the notice should be given in a time reasonably sufficient to enable the payee to effectually use his remedies for reimbursement, if it can be done.

In the course of dealing between appellant and appellee, appellant, after it had cashed the check in question along with other checks, returned them to appellee, and appellee held them for seven days without making any complaint that the check in question had been forged and then permitted appellant to charge the checks along with the forged one to its account. As we have already seen, it became its duty to examine the checks when returned to it and exercise reasonable care to see whether

any of them had been forged and, if so, to notify the bank of that fact.

Under the circumstances, we think the court erred in directing a verdict for appellee, and that it should have submitted to the jury the question of whether or not appellee had exercised ordinary care in examining the checks and discovering the forgery and reporting it to the bank.

But it is insisted by counsel for appellee that the court did not err in directing a verdict in its favor because no injury was shown to have resulted to the bank on account of the delay in reporting the forgery to it. They insist that there is no evidence in the record tending to show that any pecuniary benefit would have accrued to appellant if reasonable notice of the forgery had been given it by appellee. Hence they claim there was no testimony in the record to justify the submission of any question of fact to the jury in this case.

While the authorities are divided on this question, we think the better view is stated in the case of *Leather Manufacturers' Bank* v. *Morgan,* 117 U. S. 96, where it was held that if the depositor was guilty of negligence in not discovering and giving notice of the forgery, the bank might thereby be prejudiced because it was prevented from taking steps by the arrest of the criminal or by attachment of his property or any other form of proceedings to compel restitution. The arrest of the forger may afford means for the restoration of the money, or it may disclose ways by which the injured party may recover the money paid out, and we think it is for the jury to say whether the injured party has been deprived of or delayed in the exercise of any rights, the practical effect of which would be to enable him to protect himself.

Therefore, we are of the opinion that the court erred in directing a verdict for appellee, and for that error the judgment will be reversed and the cause remanded for a new trial.